

Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★ ★



## MEMORANDUM OPINION

No. 04-11-00817-CR

Ex Parte Jose Meza **LOPEZ**

From the County Court at Law No. 6, Bexar County, Texas
Trial Court No. 316383
Honorable Wayne A. Christian, Judge Presiding

Opinion by:　Karen Angelini, Justice

Sitting:　　Karen Angelini, Justice
　　　　　Phylis J. Speedlin, Justice
　　　　　Rebecca Simmons, Justice

Delivered and Filed:　April 25, 2012

AFFIRMED

Jose Meza Lopez appeals the trial court's order denying his habeas corpus application based on ineffective assistance of counsel. We affirm.

### BACKGROUND

Lopez is a noncitizen, who entered this country as a legal permanent resident in 2005. In January 2010, Lopez was arrested and charged with the offense of delivery of one-fourth of an ounce or less of marijuana for remuneration. The offense was a misdemeanor.[1] In January 2011, Lopez pled no contest to the charged offense and was placed on community supervision for eleven months.

---

[1]TEX. HEALTH & SAFETY CODE ANN. § 481.120(b)(2) (West 2010).

In June 2011, Lopez filed an application for a writ of habeas corpus, seeking to withdraw his plea. In his habeas corpus application, Lopez contended his counsel in the plea proceedings was ineffective because he failed to advise Lopez that "he would face certain and permanent deportation if he pled no contest." Lopez further argued his counsel's "failure to inform [him] of the deportation consequences of pleading guilty to misdemeanor delivery of marijuana for remuneration rendered [his] plea involuntary and unknowing because he did not know the immigration consequences of his plea."

The trial court held a hearing on the habeas corpus application. Lopez offered, and the trial court admitted, three affidavits in support of his application. In the first affidavit, Lopez stated that when he entered his no contest plea, he was unaware that it would result in severe consequences to his immigration status. Lopez said his retained counsel, James Hunt, did not explain that a no contest plea would result in automatic deportation. Lopez further stated he and Hunt met on two separate occasions before he entered his plea. Immediately before he entered his plea, Hunt asked him if he had consulted with an immigration attorney. According to Lopez, he told Hunt he had not. Lopez further stated that if he had known his plea was going to result in automatic deportation, he would not have pled and would have taken his case to trial.

In the second affidavit, Lopez's counsel, James Hunt, stated he met with Lopez twice before Lopez entered his plea. Hunt advised Lopez to consult with an immigration attorney because he knew Lopez was not a citizen. On the day of the plea, Hunt asked Lopez if he was ready to plead and whether he had consulted with an immigration attorney. Hunt did not specifically recall Lopez's response. Hunt further stated he recommended that Lopez enter a plea rather than proceed to trial because the terms of the plea bargain were favorable to Lopez.

In the third affidavit, Alfonso Otero, an immigration attorney, opined that Lopez's plea "unequivocally subjected [him] to automatic and permanent deportation." Otero explained that under federal immigration law, a noncitizen who is convicted of an "aggravated felony" is deportable. Otero further explained that under federal immigration law, an "aggravated felony" includes "illicit trafficking in a controlled substance" as defined by the federal Controlled Substances Act. According to Otero, a misdemeanor state drug conviction could be an aggravated felony if it was analogous to an offense under the federal Controlled Substances Act and if it was a felony punishable under federal law. Otero then compared the federal Controlled Substances Act and Section 481.120 of the Texas Health and Safety Code, the statute prohibiting the conduct with which Lopez was charged. After comparing the federal and state statutes, Otero stated that the state offense of delivery of one-quarter of an ounce or less of marijuana for remuneration constituted an "aggravated felony" under federal immigration law. Otero concluded the affidavit by stating that, in his opinion, Lopez's plea to this state drug offense unequivocally subjected Lopez to permanent and automatic deportation.

Thereafter, the State offered, and the trial court admitted, a transcript of the plea hearing into evidence. The transcript shows the following took place at the plea hearing:

Court:      Is Mr. Meza-Lopez a U.S. citizen?

Counsel:    He is not.

Court:      He is not.

            Mr. Meza-Lopez, it's my understanding that as a non U.S. citizen, that any plea you enter before this court is going to have an adverse immigration effect on you. Have you had a chance to discuss with your attorney the ramifications of entering a plea before this court with regard to your immigration status?

Meza-Lopez: Yes, sir.

Counsel: He has his own private immigration attorney, who has advised him—

Court: Well, Counsel, have you personally advised him that his entry of a plea in this case is possibly going to have an adverse effect on [h]is status immigration-wise?

Counsel: I have.

Court: And he still wants to enter a plea before this Court?

Counsel: He does.

The trial court denied Lopez's habeas corpus application. This appeal ensued.

## STANDARDS OF REVIEW

In reviewing a trial court's ruling in a habeas corpus proceeding, we review the record in the light most favorable to the trial court's ruling and uphold the ruling absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). We afford almost total deference to a trial court's findings in habeas corpus proceedings, especially when those findings are based upon an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We also defer to any implied findings and conclusions supported by the record. *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010).

Generally, to obtain habeas corpus relief on a claim of ineffective assistance of counsel, the defendant must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). However, when a defendant claims his plea was involuntary due to ineffective assistance of counsel, the defendant must show (1) counsel's advice with respect to the plea offer did not fall within the wide range of competence demanded of attorneys in criminal cases; and (2) there is a reasonable probability that, but for counsel's deficient performance, the defendant would not

have accepted the offer and pleaded guilty or nolo contendere and would have insisted on going to trial. *Ex parte Moussazadeh*, No. AP-76,439, 2012 WL 468518, at *5 (Tex. Crim. App. 2012); *Ex parte Romero*, 351 S.W.3d 127, 130-31 (Tex. App.—San Antonio 2011, no pet.). An applicant seeking habeas corpus relief on the basis of an involuntary plea must prove his claim by a preponderance of the evidence. *Kniatt*, 206 S.W.3d at 664.

### DISCUSSION

On appeal, Lopez argues the trial court abused its discretion in denying his habeas corpus application because he established both elements of his ineffective assistance of counsel claim. As to the first element, Lopez argues counsel's performance was deficient because counsel failed to advise him that Lopez would become automatically deportable upon entry of his plea. In response, the State argues counsel's performance was not deficient because it was not "truly clear" that Lopez would be deported as a result of his plea.

In *Padilla v. Kentucky*, the United States Supreme Court held that defense counsel's performance was deficient because counsel erroneously advised the defendant that a guilty plea to a drug offense would not affect his immigration status when it in fact made his deportation virtually mandatory. 130 S. Ct. 1473, 1478 (2010). In *Padilla*, the Court concluded the terms of the relevant immigration statute were "succinct, clear, and explicit" in defining the deportation consequence for the defendant's conviction. *Id.* at 1483. As a result, the Court concluded that "counsel could have easily determined that [the defendant's] plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except the most trivial of marijuana possession offenses." *Id*. The Court then held that "when the deportation consequence is truly clear…the duty to give correct advice is equally

clear." *Id*. Acknowledging that "[i]mmigration law can be complex" and "is a legal specialty of its own," the Court qualified its holding, instructing that "[w]hen the law is not succinct and straightforward…a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*.

In *Ex Parte Romero*, we applied *Padilla* and held counsel's performance was deficient because counsel failed to advise the defendant of the deportation consequences resulting from his guilty plea. 351 S.W.3d at 130. After examining the applicable immigration statutes, we concluded counsel could have easily determined that a guilty plea to the offense of aggravated sexual assault of a child would make the defendant not just at risk for possible deportation but automatically deportable. *Id*. at 130-31.

Here, Lopez maintains his case was no different than *Padilla* and *Ex parte Romero* in that the deportation consequences of his plea were truly clear, and therefore, counsel was deficient in failing to advise him of these consequences before he entered his no contest plea. After reviewing the applicable federal immigration and criminal statutes, several federal cases, and the state statute proscribing the offense in this case, we conclude this was not a situation in which the deportation consequences of a no contest plea were "succinct, clear, and explicit." Unlike the situations presented in *Padilla* and *Ex Parte Romero*, counsel could not have simply read the applicable federal immigration statutes, and concluded that Lopez would be deported if he entered a no contest plea. Even the affidavit presented by Lopez's own expert, Otero, illustrates that the deportation consequences of a no contest plea were not "succinct, clear, and explicit" in this case. In explaining why Lopez's plea made him subject to automatic deportation, Otero refers to numerous federal immigration and criminal statutes, federal cases, and administrative immigration decisions.

Federal law provides that a noncitizen who is convicted of an "aggravated felony" is deportable. 8 U.S.C. 1227(a)(2)(A)(iii). Federal immigration law defines the term "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. 1101(43)(B). Section 924(c) of Title 18 defines the term "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. 924(c)(2). Moreover, a state offense constitutes a "felony punishable under the Controlled Substances Act" only if the state offense proscribes conduct punishable as a felony under that federal law. *Lopez v. Gonzales*, 127 S. Ct. 625, 633 (2006).

Here, Lopez pled no contest to delivery of one-fourth of an ounce or less of marijuana for remuneration, a misdemeanor under state law. In this case, any deportation consequences would be discernible, if at all, only after counsel analyzed numerous statutes, court cases, and administrative decisions, and evaluated whether the state drug offense in question proscribed conduct punishable as a felony under the applicable federal laws.

We conclude counsel could not have easily determined that a nolo contendere plea would subject Lopez to deportation. Thus, under these circumstances, counsel's duty was to advise Lopez that the pending charge may carry a risk of adverse immigration consequences. *See Padilla*, 130 S. Ct. at 1483 (stating that when "the law is not succinct and straightforward" a criminal defense attorney need only advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences).

The record also supports a finding that counsel satisfied his duty to advise Lopez that his no contest plea may carry a risk of adverse immigration consequences. The transcript of the plea

hearing indicates counsel did discuss the risk of adverse immigration consequences with Lopez. At the plea hearing, the trial court expressly asked Lopez if he had discussed with counsel the effect his no contest plea might have on his immigration status. Lopez answered that he had. The transcript of the plea hearing further indicates Lopez consulted with an immigration attorney concerning the immigration consequences of his plea. Lopez's affidavit contradicts this representation. In his affidavit, Lopez states he told counsel he had not consulted with an immigration attorney. However, the trial court was not required to believe the self-serving statements contained in Lopez's affidavit. *See Bustamante v. State*, 106 S.W.3d 738, 741 (Tex. Crim. App. 2003) (noting the fact finder is free to reject self-serving statements); *Messer v. State*, 757 S.W.2d 820, 828 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (recognizing that the trial court sitting as the trier of fact in an ineffective assistance of counsel claim could properly consider the interest or bias of any witness).

Counsel's duty was to advise Lopez that the pending charge may carry a risk of adverse immigration consequences. Viewed in the light most favorable to the trial court's ruling, the evidence supports a finding that counsel performed his duty. We, therefore, conclude Lopez did not meet his burden to show that counsel's performance was deficient.

## CONCLUSION

Because Lopez failed to meet his burden to establish the first element of his ineffective assistance of counsel claim, the trial court did not abuse its discretion in denying his habeas corpus application. The trial court's order is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH